FILED

2017 OCT 18 PM 4: 04

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INDICTMENT |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:17 CR 424 |
| v. ) | |
| ) | Title 18, Sections 1349, 1343, |
| WISAM R. RIZK, ) | 1346, 2, and 1001(a)(2) & (3), |
| ) | United States Code |
| Defendant. ) | |

JUDGE GWIN

The Grand Jury charges:

**General Allegations**

At all times material to this Indictment:

    **A.**    **Defendant and His Association with The Cleveland Clinic**

1. Defendant WISAM R. RIZK ("RIZK") was a resident of Cuyahoga County, Ohio, which was located in the Northern District of Ohio, Eastern Division.

2. The Cleveland Clinic Foundation (the "Clinic") was a not-for-profit corporation that operated a hospital system and related entities. The Clinic was divided into various departments, which included one known as Cleveland Clinic Innovations ("Innovations"). The Clinic's principal place of business, and, in particular, its Innovations department, were both located in Cleveland, Ohio, which is in the Northern District of Ohio, Eastern Division.

3. Innovations was the commercialization arm of the Clinic. It assisted doctors and other Clinic personnel with inventing medical products to advance patient care and marketing those products. If a technology was deemed to merit a new venture, the Clinic, through Innovations, would facilitate the formation of, fundraising for, and governance of a spin-off company.

4. Gary Fingerhut ("Fingerhut"), who is named but not indicted herein, was hired as the General Manger of information technologies for Innovations in or around 2010. In or around 2013, he became Innovations' Executive Director and held this position until in or around June 2015, when the Clinic terminated his employment.

5. In or around 2012, Innovations formed a subsidiary company known as Interactive Visual Health Records ("IVHR") to develop a visual medical charting concept of certain Clinic physicians into a functioning, marketable product. The Clinic wholly owned and funded IVHR during the development period.

6. Fingerhut was involved in the hiring of persons to work at IVHR, including RIZK. IVHR first hired RIZK as a consultant, and later as its Chief Technology Officer. As Chief Technology Officer, RIZK oversaw the actual development of the IVHR product. Among other things, RIZK was responsible for obtaining bids from outside contractors to perform software development services and preparing that information for the selection committee.

7. As a condition of their employment with the Clinic, Fingerhut and RIZK were obligated and agreed to perform all of their employment responsibilities and duties in the best interests of the Clinic through arms-length transactions. In particular, Fingerhut and RIZK were prohibited from receiving any sort of financial benefit from and otherwise having any sort of personal or familial financial interest in third-party entities with which the Clinic did business,

unless such financial benefits and interests were expressly disclosed to the Clinic and the Clinic approved the same in advance.

8. The Clinic relied on Fingerhut and RIZK to disclose possible conflicts of interest in entering and managing third-party contracts.

    **B.**     **The Scheme to Defraud**

9. RIZK, in conjunction with Fingerhut and others known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud the Clinic of money and property and of the intangible right to the honest services of Fingerhut, RIZK, and others, and to obtain money and property from the Clinic by means of materially false and fraudulent pretenses, representations, and promises.

10. It was part of the scheme and artifice to defraud that RIZK and Fingerhut affirmatively represented to the Clinic that they were abiding by their agreement to perform all of their employment responsibilities and duties in the best interests of the Clinic through arms-length transactions when, in truth and in fact and as RIZK and Fingerhut then well knew, they were not.

11. It was further part of the scheme and artifice to defraud that RIZK and Fingerhut failed to disclose to the Clinic that they were causing the Clinic to enter into contracts and remain in contracts with one or more business entities in which RIZK and Fingerhut had a personal financial interest.

12. It was further part of the scheme and artifice to defraud that RIZK and others incorporated and caused to be incorporated a shell company known as iStarFZE LLC ("ISTAR"), that did not itself perform or provide any actual goods or services.

13. It was further part of the scheme and artifice to defraud that RIZK and others

established ISTAR in the name of a nominee owner to conceal from the Clinic that RIZK was ISTAR's true owner and financial beneficiary.

14. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR to hire a third-party company with the initials J.M., located outside the United States, to perform software development and related services on ISTAR's behalf.

15. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR to establish a mailing address, but not actual physical presence, in New York, New York, to create the false impression that it had a place of business located there.

16. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR to establish an internet website and email addresses to create the false impression that it was an operational business entity.

17. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR to submit a bid to the Clinic to develop and design the software for IVHR's medical charting product, without disclosing that J.M., not ISTAR, would actually perform the contracted software development services.

18. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR, in its bid, to increase the price that the Clinic paid for the software design and development services that J.M. performed, without disclosing that J.M. had agreed to charge a lesser amount and without disclosing RIZK's financial interest in ISTAR.

19. It was further part of the scheme and artifice to defraud that RIZK diverted the difference in price between the amount ISTAR charged the Clinic for software development services and the amount that J.M. charged ISTAR for software development services to bank accounts that RIZK controlled, for RIZK to enrich himself and to pay others to assist him with

this fraudulent scheme.

20. It was further part of the scheme and artifice to defraud that RIZK periodically paid Fingerhut a "referral" or "commission" fee, which Fingerhut accepted, in return for Fingerhut not disclosing the scheme to defraud, and thereby permitting ISTAR to keep the IVHR software development contract and obtain inflated payments from the Clinic.

21. It was further part of the scheme and artifice to defraud that RIZK caused one or more bank accounts to be established to receive the profits of RIZK and Fingerhut's scheme to defraud the Clinic, and to transfer the proceeds of the scheme to RIZK, Fingerhut, and others.

      C.    **Effect of the Scheme to Defraud**

22. As a result of RIZK and his coconspirators' fraudulent scheme and conduct, the Clinic sustained a loss of at least $2.8 million.

The Grand Jury further charges:

### COUNT 1
**(Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud, 18 U.S.C. §§ 1343 and 1346, all in violation of 18 U.S.C. § 1349)**

23. The factual allegations of paragraphs 1 through 22 of this Indictment are realleged and incorporated by references as if fully set forth herein.

24. From in or around March 2012 and continuing through on or about June 15, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, WISAM R. RIZK, Gary Fingerhut (previously charged), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to devise and intend to devise a scheme and artifice to defraud the Clinic of money and property and of the intangible right to the honest services of RIZK, Fingerhut, and others, and to obtain money and property from the Clinic by means of materially false and fraudulent

5

pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud, caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

### Object of the Conspiracy

25. The object of the conspiracy was to enrich RIZK, Fingerhut, and others via a fraudulent scheme that diverted at least $2.8 million from the Clinic by inserting a company in which RIZK and Fingerhut had concealed financial interests into transactions wherein the Clinic purchased software development services and thereby increasing the amount that the Clinic paid as a result.

### Acts In Furtherance of the Conspiracy

26. In furtherance of the conspiracy and to effect its unlawful object, RIZK committed, and caused to be committed, the following acts in the Northern District of Ohio, and elsewhere:

    A. On or about August 9, 2012, RIZK gave Fingerhut a "referral fee" check in the amount of $25,000 that was the proceeds of a Clinic payment to ISTAR, which Fingerhut deposited in a bank account that he controlled.

    B. On or about September 13, 2012, RIZK caused the Clinic to transfer $45,540 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

    C. On or about September 28, 2012, RIZK caused $8,000 to be transferred from a bank account titled to ISTAR to a personal bank account that he controlled.

    D. On or about October 23, 2012, RIZK caused $27,000 to be transferred

from a bank account titled to ISTAR to a personal bank account that he controlled.

   E. On or about November 9, 2012, RIZK caused the Clinic to transfer $62,242 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   F. On or about November 16, 2012, RIZK caused $7,425 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

   G. On or about December 14, 2012, RIZK caused the Clinic to transfer $71,392.34 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   H. On or about January 4, 2013, RIZK caused $10,000 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

   I. On or about March 13, 2013 RIZK caused the Clinic to transfer $75,754.67 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   J. On or about March 14, 2013, RIZK caused $60,000 to be transferred from a bank account titled to ISTAR to a bank account on which he was a signatory.

   K. On or about April 4, 2013, RIZK caused $7,110 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

   L. On or about July 9, 2013, RIZK caused $40,000 from the proceeds of a Clinic payment to ISTAR to be transferred to a personal account that he controlled.

   M. On or about July 12, 2013, RIZK caused the Clinic to transfer $190,496.67 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   N. On or about July 23, 2013, RIZK caused $17,100 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

   O. On or about September 13, 2013, RIZK caused the Clinic to transfer $264,993 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   P. On or about September 18, 2013, RIZK caused $98,000 to be transferred from a bank account titled to ISTAR to a bank account on which he was a signatory.

   Q. On or about September 20, 2013, RIZK caused $20,000 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

   R. On or about October 22, 2014, RIZK caused the Clinic to transfer $274,872 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

   S. On or about October 29, 2014, RIZK caused $60,000 to be transferred from a bank account titled to ISTAR to a bank account on which he was a signatory.

T.  On or about November 3, 2014, RIZK caused $31,000 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

U.  On or about December 23, 2014, RIZK caused the Clinic to transfer $179,958 to ISTAR to pay invoices in which RIZK had marked up the cost of services that J.M. had provided to the Clinic in order to divert money to RIZK, Fingerhut, and others.

V.  On or about December 31, 2014, RIZK caused $93,000 to be transferred from a bank account titled to ISTAR to a bank account on which he was a signatory.

W.  On or about January 14, 2015, RIZK caused $12,000 from the proceeds of a Clinic payment to ISTAR to be transferred to Fingerhut as a "referral fee," which Fingerhut accepted.

### The Use of Interstate Wires in Furtherance of the Conspiracy

27.  For the purpose of executing and attempting to execute the scheme and artifice to defraud described above, RIZK, Fingerhut, and others caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to and from the Northern District of Ohio and elsewhere. Such interstate wires included, but were not limited to the following:

| Date | Description and Approximate Amount of Interstate Wire | Origination Location | Recipient Location |
|---|---|---|---|
| September 13, 2012 | Check #5730 in the amount of $45,540 | Cleveland Clinic U.S. Bank Acct x3013, Miamisburg, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California, through St. Paul, Minnesota |
| September 28, 2012 | Check #5004 in the amount of $8,000 | ISTAR U.S. Bank Account x8603, California | Huntington Bank Account x6345 (controlled by RIZK), Lakewood, Ohio |

| October 23, 2012 | Wire Transfer of $27,000 | ISTAR U.S. Bank Account x8603, California | PNC Bank Acct x9116 (controlled by RIZK & M.R.), Cleveland, Ohio |
|---|---|---|---|
| November 9, 2012 | Wire transfer of $62,242 in payment of ISTAR invoices | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| November 13, 2012 | Electronic payment of $18,410.25 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-14005 (owned by RIZK), New York |
| November 16, 2012 | Wire transfer of $7,425 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |
| December 4, 2012 | Wire transfer of $71,392.34 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| January 4, 2013 | Wire transfer of $10,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |
| March 13, 2013 | Wire transfer of $75,754.67 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| March 14, 2013 | Wire transfer of $60,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | PNC Bank Acct x9116 (controlled by RIZK), Cleveland, Ohio |
| June 4, 2013 | Electronic payment of $32,496.26 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-15002 (owned by RIZK), New York |
| July 9, 2013 | Wire transfer of $40,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | PNC Bank Acct X9116 (Controlled by RIZK), Cleveland, Ohio |
| July 12, 2013 | Electronic deposit/ACH of $190,496.67 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| July 23, 2013 | Wire transfer of $17,100 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |
| September 13, 2013 | Electronic deposit/ACH of $264,993 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| September 18, 2013 | Wire transfer of $98,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |

| | | | |
|---|---|---|---|
| May 2, 2014 | Wire transfer of $50,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Blom Bank S.A.L. Acct x6414 (controlled by RIZK) received via Wells Fargo Bank, New York, New York |
| July 21, 2014 | Electronic payment of $20,000.00 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-15002 (owned by RIZK), New York |
| August 11, 2014 | Wire transfer of $30,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Blom Bank S.A.L. Acct x6414 (controlled by RIZK) received via Wells Fargo Bank, New York, New York |
| October 22, 2014 | Wire transfer of $274,872 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| October 27, 2014 | Electronic payment of $75,000.00 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-16000 (owned by RIZK), New York |
| October 29, 2014 | Wire transfer of $60,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |
| December 24, 2014 | Electronic deposit/ACH of $179,958 | Cleveland Clinic PNC Bank Acct Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| December 31, 2014 | Wire transfer of $93,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |

All in violation of Title 18, United States Code, Section 1349.

The Grand Jury further charges:

## COUNTS 2 to 28
### (Wire Fraud and Honest Services Wire Fraud, 18 U.S.C. §§ 1343 and 1346)

28. The factual allegations of paragraphs 1 through 22, and 26 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

29. From in or around March 2012, to on or about June 15, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant WISAM R. RIZK, aided and abetted by others, devised and intended to devise a scheme and artifice to defraud the Clinic of money and property and of the intangible right to the honest services of RIZK, Fingerhut (named, but not indicted herein), and others, and to obtain money and property from the Clinic by means of materially false and fraudulent pretenses, representations, and promises, as set forth in paragraphs 9 through 21 above.

30. It was further part of the scheme and artifice to defraud that RIZK caused ISTAR to engage a third-party contractor that IVHR had agreed to engage directly, and to bill IVHR, and thus the Clinic, for the third-party contractor's work at a higher rate. RIZK sought to divert the difference in price between the amount the third-party contractor charged and the amount that ISTAR charged the Clinic for the third-party contractor's work to enrich himself and another IVHR employee in return for the IVHR employee not disclosing the same. (The IVHR employee RIZK solicited, however, declined to participate in the scheme.)

### The Use of Interstate Wire Communications

31. On or about the dates set forth below, in the Northern District of Ohio and elsewhere, RIZK, for the purpose of executing and attempting to execute the scheme and artifice

to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, as described in the following chart, each transmission constituting a separate count:

| Count | Date | Description and Approximate Amount of Interstate Wire | Origination Location | Recipient Location |
|---|---|---|---|---|
| 2 | September 13, 2012 | Check #5730 in the amount of $45,540 | Cleveland Clinic U.S. Bank Acct x3013, Miamisburg, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California, through St. Paul, Minnesota |
| 3 | September 28, 2012 | Check #5004 in the amount of $8,000 | ISTAR U.S. Bank Account x8603, California | Huntington Bank Account x6345 (controlled by RIZK), Lakewood, Ohio |
| 4 | October 23, 2012 | Wire Transfer of $27,000 | ISTAR U.S. Bank Account x8603, California | PNC Bank Acct x9116 (controlled by RIZK & M.R.), Cleveland, Ohio |
| 5 | November 9, 2012 | Wire transfer of $62,242 in payment of ISTAR invoices | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| 6 | November 13, 2012 | Electronic payment of $18,410.25 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-14005 (owned by RIZK), New York |
| 7 | November 16, 2012 | Wire transfer of $7,425 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |
| 8 | December 4, 2012 | Wire transfer of $71,392.34 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| 9 | January 4, 2013 | Wire transfer of $10,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |

| 10 | March 13, 2013 | Wire transfer of $75,754.67 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
|---|---|---|---|---|
| 11 | March 14, 2013 | Wire transfer of $60,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | PNC Bank Acct x9116 (controlled by RIZK), Cleveland, Ohio |
| 12 | June 4, 2013 | Electronic payment of $32,496.26 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-15002 (owned by RIZK), New York |
| 13 | July 9, 2013 | Wire transfer of $40,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | PNC Bank Acct X9116 (Controlled by RIZK), Cleveland, Ohio |
| 14 | July 12, 2013 | Electronic deposit/ACH of $190,496.67 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| 15 | July 23, 2013 | Wire transfer of $17,100 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |
| 16 | September 13, 2013 | Electronic deposit/ACH of $264,993 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| 17 | September 18, 2013 | Wire transfer of $98,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |
| 18 | May 2, 2014 | Wire transfer of $50,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Blom Bank S.A.L. Acct x6414 (controlled by RIZK) received via Wells Fargo Bank, New York, New York |
| 19 | July 21, 2014 | Electronic payment of $20,000.00 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-15002 (owned by RIZK), New York |

| | | | | |
|---|---|---|---|---|
| 20 | August 11, 2014 | Wire transfer of $30,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Blom Bank S.A.L. Acct x6414 (controlled by RIZK) received via Wells Fargo Bank, New York, New York |
| 21 | October 22, 2014 | Wire transfer of $274,872 | Cleveland Clinic PNC Bank Acct, Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| 22 | October 27, 2014 | Electronic payment of $75,000.00 | ISTAR U.S. Bank Account x8603, California | American Express Acct. 2-16000 (owned by RIZK), New York |
| 23 | October 29, 2014 | Wire transfer of $60,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |
| 24 | December 24, 2014 | Electronic deposit/ACH of $179,958 | Cleveland Clinic PNC Bank Acct Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, California |
| 25 | December 31, 2014 | Wire transfer of $93,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |
| 26 | March 2, 2015 | Wire transfer of $178,476 | Cleveland Clinic PNC Bank Acct Cleveland, Ohio | ISTAR U.S. Bank Acct x8603, San Francisco, California |
| 27 | March 5, 2015 | Wire transfer of $36,000 | ISTAR U.S. Bank Acct x8603, San Francisco, California | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio |
| 28 | March 20, 2015 | Wire transfer of $13,000 | Huntington Bank Acct x6345 (controlled by RIZK), Lakewood, Ohio | Fingerhut U.S. Bank Acct x1873, St. Paul, Minnesota |

32. As a result of the foregoing fraudulent scheme and conduct, the Clinic sustained a loss of at least $2.8 million.

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

The Grand Jury further charges:

## COUNT 29
**(False Statement and False Document, in violation of 18 U.S.C. § 1001(a)(2)&(a)(3))**

33. The factual allegations of paragraphs 1 through 22, 26, and 30 are realleged and incorporated by reference as if fully set forth herein.

34. From in or around September 2014, through on or about the date of this Indictment, the Federal Bureau of Investigation ("FBI"), which was part of the executive branch of the Government of the United States, acting in a matter within its jurisdiction, was investigating WISAM R. RIZK, Gary Fingerhut (named, but not charged herein), and others, in connection with their involvement and actions relating to ISTAR's contracting activities with the Clinic.

35. From on or about December 16, 2014, through on or about the date of this Indictment, a Federal Grand Jury sitting in the Northern District of Ohio was conducting a criminal investigation, pursuant to its powers as set forth under Rule 6 of the Federal Rules of Criminal Procedure, into the activities of RIZK, Gary Fingerhut, and others, in connection with their involvement and actions relating to ISTAR's contracting activities with the Clinic.

36. On or about June 22, 2015, Special Agents of the FBI interviewed RIZK in connection with the investigation.

37. On or about June 22, 2015, in the Northern District of Ohio, Eastern Division, WISAM R. RIZK, in a matter within the jurisdiction of the executive branch of the Government

16

of the United States, knowingly and willfully (a) made the following materially false, fictitious, and fraudulent statements and representations, and (b) made and used the following false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements:

    A.    RIZK stated to FBI Special Agents that a person whose initials are A.K. operated and controlled ISTAR. In truth and in fact, as RIZK then well knew, RIZK caused ISTAR to be established, and RIZK, not A.K., operated and controlled it.

    B.    RIZK stated to FBI Special Agents that J.M. was a subsidiary company and a "sister company" of ISTAR. In truth and in fact, as RIZK then well knew, ISTAR was a pass-through "shell" company that did not produce or provide any actual goods or services, and J.M. was an independent entity that ISTAR subcontracted to provide software development services to the Clinic in connection with the IVHR project at a significantly lower price than the amount ISTAR charged to the Clinic for the same.

    C.    RIZK stated to FBI Special Agents that he made the Clinic aware before it contracted with ISTAR that his third-cousin owned ISTAR. In truth and in fact, as RIZK then well knew, RIZK was the actual beneficial owner of ISTAR, his brother-in-law, not his third-cousin, owned ISTAR in name only, and RIZK did not disclose either of these interests to the Clinic prior to it contracting with ISTAR.

    D.    RIZK stated to FBI Special Agents that at some point, he became a contractor for ISTAR and received payments from ISTAR for performing contract work. In truth and in fact, as RIZK then well knew, RIZK was the actual beneficial owner of ISTAR and not a contract employee, and the payments he received from ISTAR were actually money diverted from the Clinic's payments to ISTAR for the IVHR project and not for contract work.

    E.    RIZK stated to FBI Special Agents that a payment of approximately $32,000 that ISTAR made to Cleveland Tile & Cabinet for work performed at his home was made at his request because ISTAR owed him approximately $80,000. In truth and in fact, as RIZK then well knew, RIZK was the actual beneficial owner of ISTAR, ISTAR did not owe him money for contract work or otherwise, and the source of the funds was money diverted from the Clinic's payments to ISTAR for the IVHR project.

    F.    RIZK stated to FBI Special Agents that a person whose initials are G.J. was responsible for creating the ISTAR invoices sent to IVHR. In truth and in

        fact, as RIZK then well knew, RIZK caused those invoices to be created, without input from G.J.

    G.    RIZK stated to FBI Special Agents that $350,000 that RIZK transferred to Gary Fingerhut was to repay a loan that Fingerhut had previously made to him in connection with an investment and to pay Fingerhut for using his private airplane several years earlier. In truth and in fact, as RIZK then well knew, Fingerhut had not previously loaned money to RIZK, Fingerhut had not requested payments in connection with the use of an airplane, and RIZK transferred more than $350,000 to Fingerhut in return for Fingerhut permitting ISTAR to keep the IVHR software development contract despite RIZK's conflicting financial interest in it, using funds diverted from the Clinic's payments for the IVHR project.

    H.    RIZK and Fingerhut created a fake loan document to cover up the true purpose of RIZK's payments to Fingerhut.

38.    RIZK made the false statements and helped create the fake loan document described above with the intent to corruptly obstruct, influence and impede and to attempt to obstruct, influence and impede the FBI and Federal Grand Jury investigations described above. RIZK's false statements and documents caused Special Agents of the FBI to perform additional investigation.

    All in violation of Title 18, United States Code, Section 1001(a)(2) and (3).

                                                     A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.